1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11   COLLEEN M. SCHENKEL,                    No. CIV S-09-2661-CMK

12              Plaintiff,

13        vs.                    <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
              Defendant.
16
     _____/
17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22   before the court are plaintiff's motion for summary judgment (Doc. 21) and defendant's cross-

23   motion for summary judgment (Doc. 22).

24   / / /

25   / / /

26   / / /

                              1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on July 13, 2006.  In the application, plaintiff claims that disability began on November 1, 2001.  Plaintiff claims that disability is caused by a combination of "Major Depressive Disorder, PTSD, Dependent Personality traits, degenerative disc disease, degenerative joint disease in the knees, high blood pressure, obesity, diabetes, and asthma" which cause "serious symptoms, including difficulties in maintaining social functioning, difficulties in handling the stress and changes in a work environment, difficulties in activities of daily living, difficulties in maintaining concentration, persistence, or pace, difficulties in dealing with the public, pain, the need to lie down during the day, and shortness of breath."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 29, 2009, before Administrative Law Judge ("ALJ") Mark C. Ramsey.   In an April 6, 2009, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1.     The claimant has the following severe impairments: degenerative lumbar disk disease, degenerative joint disease, and depression;

2.     The claimant does not have an impairment or combination of impairments that meets or medically equals the impairments listed in the regulations;

3.     The claimant has the residual functional capacity to perform medium work except that she is limited to 20 pounds of frequent lifting or carrying and simple, unskilled tasks without frequent public interaction; and

4.     The claimant is capable of performing past relevant work as a care provider.

After the Appeals Council declined review on July 23, 2009, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:[1]

July 6, 2001 – The CAR contains an intake report from Shasta County Department of Mental Health.  She was brought in on a "5150" due to a drug overdose.  Plaintiff stated that her treatment goal was to "[g]et weaned off of pain meds for her back so she can get a job."  Plaintiff reported no suicidal or assaultive ideation.  She reported methamphetamine use within the preceding 30 days, as well as in the more distant past.  As to medications, this intake record indicates that plaintiff had been prescribed psychotropic medications but does not take them.

Shasta County Department of Mental Health records indicate that plaintiff was discharged from care on this same date.  The discharge form reflects a diagnosis of polysubstance abuse.  The record also indicates that the expected course of recovery is improvement if plaintiff maintains sobriety.  No psychotropic medications were prescribed on discharge.

A mental status examination performed this date reveals that plaintiff's appearance, behavior, and speech were all appropriate and normal.  Plaintiff's mood was anxious, though her affect was "full/appropriate."  Orientation was correct as to person, place, and situation.  Short-term and long-term memory were intact.  Intellect was considered average.  A global assessment of functioning ("GAF") score of 50 was noted.  The clinical evaluator recommended therapy and drug/alcohol treatment.

July 8, 2001 – Plaintiff returned to Shasta County Department of Mental Health, again on a "5150."  Once again, the diagnosis was polysubstance abuse.  Mental status exam results were largely unchanged since the previous visit, though it was noted that plaintiff's mood

---

[1]    Because, as is seen below, all of plaintiff's arguments in this case relate to the ALJ's assessment of the impact of her mental impairments, the court focuses on those records relating to such impairments.

1   was depressed and her affect was tearful.  Plaintiff was discharged two days later with no

2   medications prescribed.

3          July 10, 2001 – Psychiatrists at Shasta County Department of Mental Health

4   (Edward H. Macomber, M.D., and Aravind K. Pai, M.D.) completed a discharge report.  As to

5   reason for admission, the report notes:

6          This 39-year-old Caucasian female was admitted to the Shasta Psychiatric
           Hospital on a 5150 after being treated at Redding Medical Center for an
7          overdose.  The patient denies suicidal ideation but has been treated three
           times in the emergency room for overdoses in the past week to ten days.
8          She admitted to taking methamphetamine, benzodiazepines, and opiates.
           She has a history of abusing drugs but denies suicidal intent.  When asked
9          why she takes so many medications, she says, "I was not sleeping and took
           my medication to help me sleep but not to hurt myself."  She also stated
10         she wants to go to the Empire [drug rehab] program.

11  On mental status examination, the doctors reported:

12         This patient appeared her stated age of 39 years.  Her grooming and
           hygiene appeared careless.  There were no abnormal involuntary
13         movements.  Her behavior was calm.  Her mood was rather depressed.
           Her affect was sad.  She was oriented times four.  Short-term and long-
14         term memory appeared intact.  Her intellect appeared average as based on
           vocabulary, concepts, and fund of information.  Her judgment was
15         impaired, and her insight was adequate.  Her thought processes were
           totally about going home.  She denied suicidal or homicidal ideation.  She
16         also denied hallucinations, visual or auditory.

17  The doctors diagnosed adjustment disorder and polysubstance abuse and assigned a GAF score

18  of 35.   No medication was prescribed on discharge and the doctors felt that plaintiff's prognosis

19  was good as long as she participated in alcohol/drug recovery.

20         August 6, 2006 – Plaintiff completed a Function Report.  Plaintiff stated that she

21  had no problems with personal care (such as bathing, dressing, etc.).  While she stated that she

22  prepares meals three times per week, plaintiff added that she "can't cook a meal without having

23  to stop and lay down."  Plaintiff stated that she has no difficulty handling money.  She also stated

24  that she has no problems getting along with family, friends, neighbors, or others.  Plaintiff stated

25  she gets along "fine" with authority figures.  She stated that she cannot handle stress though she

26  believed she could handle changes in routine "ok, I think."

August 8, 2006 – Plaintiff's friends, Valerie Leisure, submitted a Third-Party Function Report.  Ms. Leisure also stated that plaintiff has no difficulties with accomplishing personal care tasks or handling money.  Ms. Leisure, however, disagreed with plaintiff with respect to getting along with others, stating that plaintiff "doesn't have any friends left except me."  Ms. Leisure also stated that plaintiff does not handle stress well and is slow to respond to changes in routine.

October 30, 2006 – The CAR contains a psychiatric evaluation performed by agency examining psychiatrist Thomas L. Andrews, M.D.  On mental status exam, Dr. Andrews noted that plaintiff's appearance was appropriate, her speech was coherent, her mood was depressed, and her affect was constricted.  The doctor diagnosed major depressive disorder related to PTSD resulting from childhood physical and sexual abuse.  Dr. Andrews also noted dependant personality traits and assigned a GAF score of 55.  Dr. Andrews provided the following assessment:

> This patient seemed fairly incapacitated when trying to talk about the issues of the past.  She did not want to open up.  She was very tearful, depressed, and frustrated in her overall functioning.  She finds herself despondent and unable to mentally cope and physically felt too ill to cope and these were her presenting problems.  She can communicate with others and probably handle simple tasks.  Complex tasks might be more difficult.  She can probably communicate with the general public, coworkers, and supervisors.  Whether she can handle stress and changes in the work environment, certainly remains to be seen.  That seems to be her greatest difficulty.  She can attend to safety issues at this time.  She can handle her own funds as well.

On an accompanying psychiatric technique form, Dr. Andrews opined that plaintiff had moderate restrictions on activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties with concentration, persistence, and pace, but no episodes of decompensation.

December 7, 2006 – Agency consultative psychiatrist H.M. Skopee, M.D., submitted a Mental Residual Functional Capacity Assessment.  The doctor assessed plaintiff with no significant limitations in the following areas:  ability to carry out short, simple instructions;

ability to maintain attention and concentration for extended periods of time; ability to perform activities within a specific schedule; ability to sustain an ordinary routine without special supervision; ability to work in coordination with others; ability to complete a normal workday and workweek; ability to ask simple questions; ability to accept instructions; ability to get along with coworkers and peers; ability to maintain socially appropriate behavior; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards; and ability to travel in unfamiliar places.  Plaintiff was found to be moderately limited in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; and ability to interact appropriately with the general public.  No marked limitations were noted. The doctor concluded that plaintiff "can sustain simple repetitive tasks with adequate pace and persistence, can adapt and relate to co-workers and supervisors, but likely cannot work with the public."

April 11, 2007 – Plaintiff submitted another Function Report.  Plaintiff stated that she now has problems with dressing and bathing.  She also stated that she has problems getting along with others and following written instructions.  As to her ability to follow spoken instructions, plaintiff stated "ok I guess, most of the time."  Plaintiff continued to state that she gets along "fine" with authority figures.  She also stated that she cannot handle stress or changes in routine.

April 26, 2007 – Plaintiff's friend, Perry Potter, submitted a Third-Party Function Report.  Mr. Potter stated that plaintiff has difficulties with bathing, but not dressing.  He agreed that plaintiff had no problems handling money, though he noted that he did not think plaintiff had a bank account.  Mr. Potter reported no problems with plaintiff's ability to get along with others. He added that plaintiff has difficulties following both written and spoken instructions as well as dealing with stress and changes to routine.

July 10, 2007 – Agency consultative psychiatrist S. Jaituni, M.D., submitted a mental functional capacity assessment concluding that the prior assessment completed by Dr.

1  Skopee remains accurate.

2

3                          **III.  STANDARD OF REVIEW**

4          The court reviews the Commissioner's final decision to determine whether it is:

5  (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

6  whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

7  more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

8  (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

9  support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

10  including both the evidence that supports and detracts from the Commissioner's conclusion, must

11  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

12  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

13  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

14  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

15  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

16  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

17  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

18  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

19  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

20  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

21  Cir. 1988).

22                               **IV.  DISCUSSION**

23          In her motion for summary judgment, plaintiff raises the following arguments

24  relating to the ALJ's assessment of her mental impairments: (1) the ALJ rejected the opinion of

25  the examining psychiatrist without providing a legitimate basis for doing so; (2) the ALJ failed to

26  consider lay witness evidence regarding limitations posed by plaintiff's mental impairments; and

                                        7

1   (3) the ALJ erred in not including specific work-related restrictions opined by the examining

2   psychiatrist in his residual functional capacity assessment.[2]

3       **A.**     **Evaluation of Medical Opinion Evidence**

4           The weight given to medical opinions depends in part on whether they are

5   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

6   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

7   professional, who has a greater opportunity to know and observe the patient as an individual,

8   than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

9   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

10  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

11  (9th Cir. 1990).

12          In addition to considering its source, to evaluate whether the Commissioner

13  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

14  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

15  uncontradicted opinion of a treating or examining medical professional only for "clear and

16  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

17  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

18  by an examining professional's opinion which is supported by different independent clinical

19  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

20  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

21  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

22  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

23  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

24  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

25

26       [2]      Plaintiff does not raise any arguments relating to her physical impairments.

1  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

2  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

3  without other evidence, is insufficient to reject the opinion of a treating or examining

4  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

5  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

6  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

7  see also Magallanes, 881 F.2d at 751.

8            Plaintiff argues that the ALJ erred by completely ignoring the opinions expressed

9  by Dr. Andrews, the agency examining psychiatrist.  As to opinions expressed regarding

10 plaintiff's mental impairments, the ALJ stated:

11          . . . October 2006 psychiatric consultation [by Dr. Andrews] revealed
            depressive and anxiety disorders which limited her to simple tasks (Ex.
12          7F). . . .

13                                          * * *

14          . . . Her restriction to simple, unskilled jobs does not markedly erode the
            remaining occupational bases.  Likewise, no frequent public interaction is
15          not a significant factor because unskilled jobs generally involve dealing
            with things rather than people.
16

17 There are no other references in the hearing decision to opinions related to plaintiff's mental

18 functioning.  According to plaintiff, the ALJ erred because he "failed to reference Dr. Andrews'

19 diagnoses, GAF score, or the fact that Ms. Schenkel's ability to handle stress and changes in a

20 work environment was impaired."  Plaintiff adds: "Specifically, the ALJ completely ignored Dr.

21 Andrews' opinion that Ms. Schenkel's ability to handle work stress and changes was impaired."

22            Citing Valentine v. Astrue,, defendant argues that Dr. Andrews' statements

23 regarding plaintiff's ability to handle stress and changes in routine constituted "neither a

24 diagnosis nor statement of [Plaintiff's] functional capacity."  574 F.3d 685, 692 (9th Cir. 2009).

25 Defendant concludes that, because Dr. Andrews' statements regarding stress and changes in

26 routine were not expressions of the doctor's opinion as to functional limitations, the ALJ did not

err in ignoring them.  The court agrees.  As to plaintiff's ability to handle stress and changes in routine, Dr. Andrews stated: "Whether she can handle stress and changes in the work environment, certainly remains to be seen."  The court can see no way in which this statement could have been interpreted by the ALJ as expressing Dr. Andrews' opinion on the topic.  Indeed, there is no expression of any opinion whatsoever in Dr. Andrews' statement.  Rather, the doctor's statement indicates uncertainty regarding plaintiff's ability to handle stress and routine changes.  The only opinions on these issues were expressed by the agency consultative doctors, who both agreed that plaintiff was not limited in these areas.  The ALJ was entitled to rely on these uncontradicted opinions in forming his residual functional capacity finding.

Likewise, the court agrees with defendant that Dr. Andrews' opinion regarding plaintiff's GAF score does not, in and of itself, represent an opinion as to any specific functional limitations.  Rather, as the term itself suggests, "GAF" relates to an individual's overall functioning and not any particular limitation.  Thus, it is impossible to determine simply from an opinion as to GAF score what, if any, particular functional limitations contributed to that score.

### B.    Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

The ALJ, however, need not discuss all evidence presented.  See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why "significant probative evidence has been rejected."  Id. (citing Cotter v. Harris, 642 F.2d 700,

706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision.  See id.  As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity.  Id.

          In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments.  Id.  The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.  Noting that the lay witness testimony in question was "consistent with medical evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work."  Id. at 1053.  The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at 1054-55.  The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

          From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at

1    1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must

2    consider and comment upon it by providing sufficient reasons for ignoring it.  See Stout, 454

3    F.3d at 1053.  However, the Commissioner's regulations require the ALJ consider lay witness

4    testimony in certain types of cases.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996);

5    SSR 88-13.  That ruling requires the ALJ to consider third-party lay witness evidence where the

6    plaintiff alleges pain or other symptoms that are not shown by the medical evidence.  See id.

7    Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by

8    their very nature do not always produce clinical medical evidence), it is impossible for the court

9    to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily

10   controverted such that it may be properly ignored.  Therefore, in these types of cases, the ALJ is

11   required by the regulations and case law to consider lay witness evidence.

12          Plaintiff argues that the ALJ's failure to even acknowledge the lay witness

13   statements from Ms. Leisure and Mr. Potter violated the requirement that lay testimony be

14   discussed and, if discounted, that reasons germane to each witness must be provided.  Plaintiff

15   concludes that, "[h]ad the ALJ properly credited the third party evidence, a finding of disabled

16   would have followed."

17          At the outset, the court notes that plaintiff is correct in stating that the ALJ

18   ignored the third-party statements provided by Ms. Leisure and Mr. Potter.  The ALJ, however,

19   did not err in doing so.  Here, Ms. Leisure stated that plaintiff does not handle stress well and is

20   slow to respond to changes in routine.  Mr. Potter agreed.  These statement, however, are

21   inconsistent with the medical evidence (i.e., contradicted) in that no doctor opined as to such

22   limitations.  Rather, the state agency consultative doctors both generally concluded that plaintiff

23   was not limited in these areas of functioning.  The only significant limitation to functioning was

24   in plaintiff's ability to interact with the public and the ALJ included such limitation in his

25   residual functional capacity assessment.  As in Vincent, the ALJ did not err in ignoring the

26   statements from Ms. Leisure and Mr. Potter because they "conflicted with the available medical

1  evidence" assessing the plaintiff's mental capacity.  730 F.2d at 1395.

2  **C.    Residual Functional Capacity Assessment**

3          In determining residual functional capacity, the ALJ must assess what the plaintiff

4  can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a),

5  416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual

6  functional capacity reflects current "physical and mental capabilities").  Where there is a

7  colorable claim of mental impairment, the regulations require the ALJ to follow a special

8  procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent

9  findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

10          Plaintiff argues that the ALJ's residual functional capacity assessment is flawed

11  because it fails to account for Dr. Andrews' statements regarding plaintiff's ability to handle

12  stress and changes in routine.  As discussed above, however, Dr. Andrews did not express any

13  opinion as to whether plaintiff was functionally limited due to these factors and the other doctors

14  who did express opinions in this regard found no functional limitations.  Therefore, the ALJ did

15  not err by outlining a residual functional capacity that did not include limitations with respect to

16  handling stress and changes in routine.  The ALJ's residual functional capacity assessment was

17  consistent with the opinions of the agency consultative doctors who both agreed that plaintiff

18  "can sustain simple repetitive tasks with adequate pace and persistence, can adapt and relate to

19  co-workers and supervisors, but likely cannot work with the public."

20

21                              **V.  CONCLUSION**

22          Based on the foregoing, the court concludes that the Commissioner's final

23  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

24  ORDERED that:

25          1.      Plaintiff's motion for summary judgment (Doc. 21) is denied;

26          2.      Defendant's cross-motion for summary judgment (Doc. 22) is granted; and

3.      The Clerk of the Court is directed to enter judgment and close this file.


DATED:  March 24, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE